# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-2575

BCS INSURANCE COMPANY,

*Plaintiff-Appellant*,

v.

WELLMARK, INCORPORATED,
doing business as BLUE CROSS
AND BLUE SHIELD OF IOWA,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 04 C 969—**Joan B. Gottschall**, *Judge.*

_____

ARGUED DECEMBER 8, 2004—DECIDED JUNE 1, 2005

_____

Before FLAUM, *Chief Judge*, and POSNER and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* BCS Insurance Company seeks an order compelling arbitration of a dispute with its insured, Wellmark, Inc., pursuant to an arbitration clause in its insurance policy that provides for arbitration of disputes "at the option of the . . . Insured." Wellmark, the insured, opted to litigate rather than arbitrate, as was its right under the plain language of the arbitration clause.

BCS prefers arbitration, however, and to avoid Wellmark's exercise of the litigation option has invoked what it refers to as the "relation back" provision of the policy. That provision, appearing in the liability limits section of the policy, says that claims arising out of the same or interrelated wrongful acts are treated as a single claim deemed made at the time the earliest claim was made. BCS contends that Wellmark's claim is related to certain other claims made against earlier policies BCS issued to Wellmark. The earlier policies contained mandatory rather than optional arbitration clauses. Therefore, BCS argues, the "relation back" clause operates to bring this claim within the mandatory arbitration provision of the earliest policy.

We reject this reading of the policy. The so-called "relation back" clause of the policy may or may not operate to limit the availability or scope of coverage for this claim. That, however, is a question on the merits of the claim, not its arbitrability. The arbitration clause of the policy in question unambiguously *allows* but does not *require* arbitration. It is the insured's choice. Wellmark chose litigation. The district court properly refused to compel arbitration.

## I. Background

BCS issued errors-and-omissions insurance policies to Wellmark annually between 1994 and 1997. The policies provide "claims made and reported" coverage, which means that each policy only covers claims made against and reported by Wellmark within the specified policy period. *See Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (distinguishing types of insurance policies). The 1994-1996 policies contain mandatory arbitration clauses; however, the 1997 policy provides for optional arbitration and gives the choice to the insured. The arbitration clause of the 1997 policy reads as follows: "Any controversy arising out of or relating to this Policy or

the breach thereof shall, at the option of the Participant Insured, . . . be settled by binding arbitration."

In four class action lawsuits brought in 1994, 1995, 1996, and 1997, Wellmark, which does business as Blue Cross and Blue Shield of Iowa, was accused of making illegal profits based on undisclosed agreements it had with medical providers. Wellmark ultimately settled the lawsuits and sought coverage from BCS. Following attempts at negotiation, Wellmark filed suit against BCS in the United States District Court for the Southern District of Iowa seeking coverage under the 1997 policy. BCS believed that arbitration of all of Wellmark's claims was required and filed suit in the Northern District of Illinois to compel arbitration.

By agreement of the parties, the district court ordered arbitration of the claims made under the 1994-1996 policies pursuant to the mandatory arbitration provisions in those policies. Based on the optional nature of the arbitration clause in the 1997 policy, however, the district court refused to order arbitration of the claim against that policy. The court rejected BCS's argument that the "relation back" provision in the 1997 policy brought the 1997 claim within the mandatory arbitration clauses of the earlier policies.[1]

## II. Discussion

The plain language of the 1997 policy permits but does not require arbitration, at the option of the insured, and that ought to be enough to turn away BCS's attempt to compel Wellmark to arbitrate the 1997 claim. BCS says it's not that simple. Citing *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643 (1986), BCS argues that

---

[1] The litigation in the United States District Court for the Southern District of Iowa has been stayed pending the outcome of this case and the conclusion of the arbitration.

because the policy contains an arbitration clause, a "federal presumption of arbitration" applies. BCS also reiterates its argument that the "relation back" provision in the 1997 policy brings the 1997 claim within the mandatory arbitration provision of the earliest policy, covering the period January 1, 1994, to January 1, 1995.

The first argument is easily dispatched. BCS overreads the arbitration "presumption" language from *AT&T Technologies.* Arbitration is a matter of consent. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). "The [Federal Arbitration Act] directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'" *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002) (quoting *Volt*, 489 U.S. at 478). The language of the parties' agreement determines arbitrability, and "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Id.* at 294 (citation omitted).

Further, while "[t]here is no denying that many decisions proclaim that federal policy favors arbitration, . . . this differs from saying that courts read contracts to foist arbitration on parties who have not genuinely agreed to that device." *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003). Just "[a]s there is no thumb on the scale in favor of one judicial forum over another, there is no preference for arbitration over adjudication either." *Id.* at 346. The judicial task is "to implement the *parties*' preferences between judicial and arbitral forums, not to displace that choice with one of our own." *Id.* Here, the parties unambiguously agreed to arbitration of disputes *at the option of the insured.* This clear language cannot be overridden by a "presumption of

arbitration" to force mandatory arbitration upon the insured where only optional arbitration was specified.

BCS's argument about the operation of the 1997 policy's "relation back" clause is also unavailing. That clause, appearing in the policy's "Limits of Liability" section, provides:

> All Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same Wrongful Act or Interrelated Wrongful Acts shall be deemed to be a single Claim made at the time the earliest such Claim is made.

BCS asserts that the claim made under the 1997 policy is related to the other claims dating back to 1994 and therefore the 1997 claim must be deemed a single claim under the 1994 policy. Because the 1994 policy contains a mandatory arbitration clause, BCS argues that the district court should have ordered arbitration of the 1997 claim along with the claims against the 1994-1996 policies.

The district court construed the so-called "relation back" provision as applying to "claims arising from several interrelated wrongful acts *within* the 1997 policy period, not *across* policy periods." Based on this interpretation, the court refused to "rewrite the unambiguous language of the 1997 policy's optional arbitration clause to make [the 1997] claim arbitrable against Wellmark's wishes." BCS argues that this interpretation of the "relation back" clause was "far out of bounds" because it constituted an impermissible ruling on the merits of the underlying claim in the context of deciding arbitrability. *AT&T Techs.*, 475 U.S. at 649-50 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."); *Indep. Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233, 236 (7th Cir. 1993) ("In other words, we judges may not peek.").

We agree that the district court should not have engaged in an interpretation of the "relation back" clause in deciding

whether to compel arbitration of the 1997 claim. That does not mean that BCS's argument prevails. BCS is itself urging an interpretation of the "relation back" clause that implicates the merits of the underlying dispute. We need not weigh in. There are circumstances in which a court's decision on arbitrability "collapse[s] into the same inquiry" as a decision on the merits. *Indep. Lift Truck*, 2 F.3d at 235. In those circumstances the court cannot avoid the duty to decide arbitrability because the decision necessarily implicates a decision on the substantive merits of the dispute. *Id.* at 236 (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 209 (1991)). This is not such a circumstance.

Whatever effect the "relation back" clause might have on the existence of coverage, the application of deductibles, and the limits of liability, it does not modify the arbitration clause. That clause provides that "[a]ny controversy arising out of or relating to" the 1997 policy is arbitrable, but only at the insured's option. The only possible question is whether this dispute is a "controversy arising out of or relating to" the 1997 policy; clearly, it is.

Wellmark cannot be compelled to arbitrate the claim against the 1997 policy when that policy provides for arbitration at its sole option. The decision of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*